UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED ANDREW MARTIN,<br><br>                 Plaintiff,<br><br>       v.<br><br>A. DELACRUZ, et al.,<br><br>                 Defendants. | Case No.   1:22-cv-01351-ADA-EPG<br><br>ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED WITH PREJUDICE BASED ON CLAIM PRECLUSION AND FRIVOLOUSNESS<br><br>RESPONSE DUE WITHIN TWENTY-ONE DAYS<br><br>(ECF No. 1) |

Plaintiff Jared Andrew Martin is confined at the Madera County Jail and proceeds *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. (ECF Nos. 1, 7). Plaintiff filed his complaint on October 21, 2022, primarily alleging that A. Delacruz, a correctional officer, violated his civil rights while he was incarcerated at Kern Valley State Prison by, among other things, using excessive force against him, subjecting him to unconstitutional conditions of confinement, and being deliberately indifferent to his safety. (ECF No. 1).

Upon review of the allegations in the complaint, it appears that Plaintiff's claims are barred by claim preclusion because he brought them in a prior lawsuit, *Martin v. Delacruz, et al.*, 1:22-cv-812-ADA-SAB, which was adjudicated on the merits. Additionally, it appears that this case is frivolous. Accordingly, the Court will order Plaintiff to show cause why this case should not be dismissed with prejudice. *See Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1055 (9th Cir. 2005) (noting that a court should give notice and an opportunity to respond before dismissing a case on claim preclusion grounds).

**I.       SCREENING REQUIREMENT**

The Court is required to screen complaints brought by pretrial detainees or prisoners seeking relief against a governmental entity or its officers or employees. 28 U.S.C. § 1915A(a) (requiring court to review civil complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity"); § 1915A(c) (defining "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program"). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint on these same grounds under 28 U.S.C. § 1915(e)(2)(B). (ECF No. 7).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

///

///

## II. PLAINTIFF'S PRIOR CASE

As an initial matter, the Court notes that Plaintiff has filed at least twenty-two cases this year.[1] Pertinent here is *Martin v. Delacruz, et al.*, 1:22-cv-812-ADA-SAB, which Plaintiff filed on July 1, 2022. (ECF No. 1).[2] Plaintiff's initial complaint in that prior case stated that his claims arose from his confinement at Kern Valley State Prison and he sued Delacruz, Warden Christian Pfeiffer, Secretary of the CDCR Kathleen Allison, and the County of Kern. Plaintiff primarily focused his allegations on Delacruz, alleging that he twisted his arms and put his handcuffs on too tight for no reason, would not let people push him in his wheelchair, smashed him between a wall and cell door, failed to feed him, threw his food on the floor, failed to remedy flooding in his cell, limited access to the phones and television and told other prisoners it was his fault, threatened him with violence, made him walk on a wet floor so he could slip, failed to replace his socks and busted shoes, prevented his sink from being fixed, tortured him, terrorized him, tried to murder him, and would not let him attend medical appointments. As to the other Defendants, Plaintiff indicated that they failed to stop Delacruz's conduct. Under the section of the form complaint regarding the rights allegedly violated, Plaintiff listed the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. For relief, Plaintiff sought to have Delacruz fired and arrested and for KVSP to be investigated. He also requested FBI protection, assistance from the United States Attorney, and $100 million in damages.

Magistrate Judge Stanley A. Boone screened the case on July 11, 2022, concluding that the complaint failed to comply with the requirements of Federal Rule of Civil Procedure 8. Specifically, the complaint was "replete with legal conclusions devoid of factual support" and "Plaintiff identifie[d] a multitude of different claims against Defendant De La Cruz, without sufficient explanation as to the factual basis for the claims." (ECF No. 7, pp. 3-4). Plaintiff was

---

[1] *See* 1:22-cv-2-DAD-SAB; 1:22-cv-56-JLT-CDB; 1:22-cv-560-ADA-HBK; 1:22-cv-600-ADA-BAM; 1:22-cv-681-AWI-EPG; 1:22-cv-698-AWI-SKO; 1:22-cv-748-ADA-EPG; 1:22-cv-749-ADA-BAM; 1:22-cv-766-AWI-HBK; 1:22-cv-810-AWI-GSA; 1:22-cv-812-ADA-SAB; 1:22-cv-847-JLT-EPG; 1:22-cv-860-AWI-CDB; 1:22-cv-889-AWI-BAM; 1:22-cv-914-JLT-SAB; 1:22-cv-953-JLT-SKO; 1:22-cv-1001-AWI-GSA; 1:22-cv-1083-JLT-EPG; 1:22-cv-1172-ADA-GSA; 1:22-cv-1351-ADA-EPG; 1:22-cv-1455-HBK; and 1:22-cv-1484-EPG. The Court takes judicial notice of the dockets and filings from other cases that it cites in this order. *See Ray v. Lara*, 31 F.4th 692, 697 n.4 (9th Cir. 2022) (taking judicial notice of district court records).

[2] All ECF citations in this section are to Plaintiff's prior case.

given leave to amend his complaint and provided the legal standards for excessive force, conditions of confinement, deliberate indifference to safety, disability, access to the courts, and retaliation claims and generally advised about the deficiencies in his complaint, *e.g.*, that his allegations about Delacruz handcuffing him and twisting his arms were "conclusory and unsupported by sufficient factual allegations explaining the events and circumstances that led up [the] alleged use of force." (*Id.* at 4).

On July 19, 2022, Plaintiff filed an amended complaint, adding the City of Delano as a defendant. (ECF No. 9). This amended complaint alleged that Delacruz handcuffed him and twisted his arms for no reason, took every opportunity to assault and abuse him, did not feed him, threw his food on the floor, retaliated against him, tortured him, tried to murder him, limited access to the phones and television and told other prisoners it was Plaintiff's fault, failed to remedy the flooding in his cell, did not replace his socks and busted shoes, tried to stop him from filing court cases, retaliated against him, tore up his cell, stole his property, smashed him in the door of his cell, and wrote him up for nothing. Under the section of the form complaint regarding the rights allegedly violated, Plaintiff listed the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Plaintiff requested that Delacruz be fired and arrested, FBI protection, assistance from the United States Attorney, and $100 million in damages.

On July 27, 2022, Magistrate Judge Boone issued findings and recommendations, recommending that the prior case be dismissed for failure to state a claim and without leave to amend, concluding that "Plaintiff[] fail[ed] to provide additional information about his claims despite specific instructions from the [C]ourt." (ECF No. 11, p. 7). For example, "[a]lthough Plaintiff contend[ed] that Defendant De La Cruz would place the handcuffs on him too tightly and twist hi[s] arm, Plaintiff's allegations [were] conclusory and unsupported by sufficient factual allegations explaining the events and circumstances that led up to Defendant De La Cruz's alleged use of force on Plaintiff." (*Id.* at 3).

On September 16, 2022, District Judge Ana de Alba adopted the findings and recommendations over Plaintiff's objections and dismissed the prior case for failure to state a cognizable claim upon which relief may be granted. (ECF No. 15). She also denied a motion

Plaintiff filed to disqualify Magistrate Judge Boone. Judgment was entered, and Plaintiff did not file an appeal. (ECF No. 16).

### III. SUMMARY OF PLAINTIFF'S INSTANT COMPLAINT

Plaintiff filed the instant complaint on October 21, 2022, about one month after the dismissal of his prior case. (ECF No. 1). Plaintiff alleges that his claims arise from his confinement at KVSP and sues Delacruz, Pfeiffer, the County of Kern, and the City of Delano. Plaintiff brings ten claims, primarily focusing his allegations on Delacruz.

For his first claim, Plaintiff states that, on June 7, 2021, Delacruz wrote him up for not moving although he had clearance from a yard sergeant that he "did not have to move to be put on quarantine."[3] On June 22, 2021, he complained about his sink being stopped up, but "Delacruz refused to have it fixed." On July 7, 2021, Plaintiff reported that his cell was flooding but "Delacruz would not help [him]."

For his second claim, Plaintiff states that, on August 18, 2021, Delacruz used unnecessary force by grabbing him and pushing him around for no reason.[4] On July 8, 2021, he complained that his "shoes were busted" and his "socks had holes in them and [his] cell was flooding." Delacruz did not have the flooding remedied and did not replace his shoes or socks. Delacruz would write Plaintiff up just because he could and because Plaintiff "was writing him up."

For his third claim, Plaintiff states that, on July 9, 2021, Delacruz refused to order 602 grievance form attachments and was trying to stop Plaintiff's grievances. As of July 11, 2021, he was still having problems with flooding in his cell and Delacruz did not give him towels or blankets to soak up the water. Plaintiff knew that Delacruz was trying to kill him because Delacruz knows that, with Plaintiff's health problems, his conduct could kill Plaintiff. Warden Pfeiffer "did nothing."

For his fourth claim, Plaintiff states that, on September 29, 2021, he submitted an emergency staff complaint because Delacruz "trashed" his cell. Delacruz continued to harass and abuse him. On October 21, 2021, Delacruz made him shower last. He would do whatever he

---

[3] Minor alterations, such as changing capitalization, have been made to some of Plaintiff's quotes without indicating each change.
[4] Some of Plaintiff's factual allegations span multiple claims. The Court recites the allegations under the claim where there are primarily featured.

could to hurt Plaintiff, writing a false RVR because Plaintiff refused to stand for count when Plaintiff was unable to stand because he was disabled.

For his fifth claim, Plaintiff states that he did not "pursue the first lawsuit against Delacruz because [he] did not have some files and records," which were illegally seized by the Madera County Sheriffs, who purposely interfere with his lawsuits. On October 6, 2021, Delacruz "just started in on [him], grabbing [him] and throwing [him] around and twisting [his] arms and putting handcuffs on [him] too tight" although Plaintiff was doing nothing wrong. This was "torture." Plaintiff submitted an emergency staff complaint on October 12, 2021, about Delacruz's abuse.

For his sixth claim, Plaintiff states that, despite his multiple complaints, "not one CDCR employee stopped Officer Delacruz from abusing [his] First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights." On November 7, 2021, he wrote another complaint. Delacruz refused to give him "indigent envelopes and paper." On November 9, 2021, Delacruz "attack[ed] [him] for no reason." He twisted Plaintiffs arms and put the handcuffs on too tight although Plaintiff was not hurting anyone. Delacruz did it because of the complaints that Plaintiff submitted against him. Delacruz wanted him dead but could not kill him because Plaintiff has witnesses to beatings, sexual harassment, and abuse from Delacruz and other correctional officers. On November 14, 2021, Delacruz refused to let anyone push Plaintiff to pill call and watched him fall on the floor three or four times and did nothing.

For his seventh claim, Plaintiff states that, on December 7, 2021, he complained about Delacruz. While Plaintiff was gone at the doctor on December 6, 2021, Delacruz fabricated a story about his cell not being functional and moved him. Plaintiff's prior cell was near the ADA shower, and Delacruz moved him to "torture" him. On December 13, 2021, Delacruz took some papers from an inmate helping Plaintiff with his legal work and threw them under Plaintiff's cell door, stating that the inmate could not help Plaintiff. That same day, Delacruz refused to let him out of his cell for a grievance interview because he was trying to cover up his misconduct. On December 21, 2021, Delacruz refused to let an ADA worker assist Plaintiff. On December 22, 2021, Delacruz tried to make Plaintiff, who regularly falls, walk on a wet floor in an attempt to kill him.

6

For his eighth claim, Plaintiff states that, on January 4, 2022, Delacruz refused to let him e-file a § 1983 lawsuit. The Kern County Sheriffs let Delacruz do whatever he wanted. On January 17, 2022, Delacruz refused to turn on the TV and told prisoners that he was doing it because Plaintiff writes 602s on him, in an attempt to get other prisoners to jump him. Warden Pfeiffer failed to stop Delacruz's abuse. On January 17, 2022, Delacruz refused to feed him. On January 22, 2022, Delacruz refused to give him a shower. On February 16, 2022, Delacruz told inmates that they were not getting phone calls because of Plaintiff to get them to attack Plaintiff.

For his ninth claim, Plaintiff states that, on February 26, 2022, Delacruz would not let him out of his cell to get his medications despite knowing that Plaintiff is sick and has several diseases. On March 1, 2022, Plaintiff reported Delacruz for stealing legal paperwork from his cell. Delacruz interfered with Plaintiff's lawsuits and habeas petitions, stopped him from getting help from other prisoners, and refused to let him go to the law library. On March 1, 2022, Delacruz closed the cell door on Plaintiff and then opened the door and tried to close him in the door. He did this "as to pretend this was going to crush [Plaintiff]." Delacruz has tried to kill him on many occasions. Delacruz would not let Plaintiff out of his cell to go to medical appointments and stopped him from getting his medications. Plaintiff claims that his "previous lawsuit . . . was not dismissed for failure to state a cognizable claim. [He] voluntarily dismissed [it] because [he] was dealing with that fraud Stanley A. Boone." Plaintiff was supposed to get back shots on March 30, 2022, but Delacruz canceled his appointment and sent him to Madera County Jail.

For his tenth claim, Plaintiff generally indicates that this suit has merit and asks that the case not be assigned to Magistrate Judge Boone. Additionally, he states that Delacruz's conduct cannot be ignored or he will be given a license to torture and kill.

Regarding the rights allegedly violated, Plaintiff lists the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and 18 U.S.C. § 113 (criminalizing assault), § 2340 (defining torture), and § 2340A (criminalizing torture).

As for relief, Plaintiff wants those involved fired and arrested, State and Federal investigations into KVSP, FBI protection, assistance from the United States Attorney, and $100 million.

///

### IV. ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A. Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual

8

connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### B. Claim Preclusion

"As a general matter, a court may, *sua sponte*, dismiss a case on preclusion grounds where the records of that court show that a previous action covering the same subject matter and parties had been dismissed." *Headwaters Inc.*, 399 F.3d at 1054 (internal citation and quotation marks omitted). Additionally, duplicative lawsuits may be dismissed as being malicious or frivolous. *See Daniels v. Sherman*, No. 1:18-CV-01420-AWI-BAM (PC), 2021 WL 4480295, at *5 (E.D. Cal. Sept. 30, 2021) ("An *in forma pauperis* complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under § 1915.") (internal citations omitted).

At issue here is claim preclusion (sometimes called res judicata) which "generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001); *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020) (noting that claim preclusion is sometimes called res judicata). The purpose of claim preclusion is "[t]o preclude parties from contesting matters that they have had a full and fair opportunity to litigate," which serves to protect against "the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979). Claim preclusion applies in civil cases like § 1983 actions. *United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008) (noting that claim preclusion applies in civil proceedings); *Ewing v. Superior Ct. of California*, 90 F. Supp. 3d 1067, 1075 (S.D. Cal. 2015) (noting that claim preclusion applies in § 1983 actions).

"Claim preclusion . . . applies where: (1) the same parties, or their privies, were involved in the prior litigation, (2) the prior litigation involved the same claim or cause of action as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits." *Central Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002).

Here, the first element appears met as both cases involved the same parties—Plaintiff and Defendants Delacruz, Pfeiffer, County of Kern, and the City of Delano.[5] *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) ("We first note that several parties in both actions are identical, and therefore quite obviously in privity.).

In considering the second element—whether there is an identity of claims—the Court considers four factors, with the fourth being the most important:

> "(1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."

*Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). Each appears met here.

Defendants' interest in the prior judgment dismissing Plaintiff's case against them would be impaired were Plaintiff allowed to relitigate this action. The second, third, and fourth factors appear met as both cases rely on substantially the same evidence to prove the same violation of rights involving the same set of facts. *See United States v. Liquidators of Eur. Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011) (concluding that there was an identity of claims where there were "no real differences (if there are any differences at all) between the factual predicates for the two [] actions"). Most notably, both suits concern Plaintiff's allegations that, while confined at KVSP, Delacruz continually violated Plaintiff's First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights by, among other things, twisting his arms and handcuffing him too tightly, failing to remedy flooding in his cell, and trying to provoke other prisoners to attack Plaintiff by blaming him for limited access to the television and phones. Moreover, in both suits, Plaintiff indicates that the other Defendants failed to prevent Delacruz's abuses from happening. While the Court acknowledges that Plaintiff provides additional legal theories (such as citing criminal statutes concerning torture) and facts (such as providing specific dates concerning these events) in his instant complaint, this does not mean that both suits involve different claims for purposes of claim preclusion.

As the Ninth Circuit has noted, the requirement for "an 'identity of claims' does not mean that an imaginative attorney may avoid preclusion by attaching a different legal label to an issue

---

[5] The Court notes that Plaintiff has not sued Kathleen Allison as he did in the prior case.

that has, or could have, been litigated . . . . Newly articulated claims based on the same nucleus of facts may still be subject to [claim preclusion] if the claims could have been brought in the earlier action." *Tahoe-Sierra Pres. Council, Inc.*, 322 F.3d at 1077-78. Likewise, the assertion of new facts is no bar to claim preclusion. *Morris v. Mini*, No. 2:12-CV-1774-TLN-DMC-P, 2019 WL 3425277, at *5 (E.D. Cal. July 30, 2019), *report and recommendation adopted*, No. 2019 WL 11637300 (E.D. Cal. Sept. 18, 2019) (concluding that assertion of "new facts" did not prevent application of claim preclusion). Here, Plaintiff's allegations from both cases concern the same operative facts regarding the alleged abuses suffered at the hands of Delacruz while Plaintiff was confined at KSVP, with the other Defendants failing to prevent them. *See Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (concluding that two sets of claims both involved a common nucleus of operative fact where they arose from defendant's "conduct while [plaintiff] was an employee and specifically from the events leading to his termination").

Moreover, the Court recognizes that "[c]laim preclusion generally does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Lucky Brand Dungarees, Inc.*, 140 S. Ct. at 1596 (internal citations and quotation marks omitted). However, Plaintiff's allegations span June 2021 to March 2022, thus occurring before the filing of his initial complaint in July 2022 in *Martin v. Delacruz, et al.*, 1:22-cv-812-ADA-SAB.

Notably, Plaintiff appears to acknowledge that the two cases are the same. As recounted above, his complaint refers to his prior suit against Delacruz, although he falsely claims that his "previous lawsuit . . . was not dismissed for failure to state a cognizable claim."[6] (ECF No. 1, p. 15). And Plaintiff's complaints about Magistrate Judge Boone's handling of his prior case, along with his request that this case not be assigned to him, suggest that Plaintiff's filing of the instant complaint is an improper attempt to revive his dismissed claims.

Lastly, the final element appears met because the prior case was terminated by a final judgment on the merits when it was dismissed for failure to state a claim. *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) (noting that "a dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits' to which res judicata applies"); (*see* ECF No.

---

[6] Also, Plaintiff's application to proceed *in forma pauperis* contains the case number from his prior case—1:22-cv-812-ADA-SAB—although it is crossed out with the instant case number being listed above it. (ECF No. 4, p. 1).

15, p. 3 from *Martin v. Delacruz, et al.*, 1:22-cv-812-ADA-SAB – dismissing action "due to plaintiff's failure to state a cognizable claim upon which relief may be granted").

Accordingly, it appears that the doctrine of claim preclusion prevents Plaintiff from proceeding on his instant claims.

### C.    Frivolousness

A duplicative lawsuit can rise to the level of frivolousness, which, as noted above, is one of the bases to dismiss complaints at the screening stage. "Lawsuits barred by claim preclusion are frivolous if a reasonable and competent inquiry would have led to this conclusion." *Lull v. Cnty. of Sacramento*, No. 2:20-CV-1645-KJM-CKD, 2021 WL 5054392, at *5 (E.D. Cal. Nov. 1, 2021).

Here, it appears that Plaintiff is aware that his case is duplicative of the prior case (which had already been dismissed when he filed this case), and thus this case is frivolous.

First, Plaintiff's complaint acknowledges a prior lawsuit against Delacruz over which Magistrate Judge Boone presided, which by all indications is his prior case in *Martin v. Delacruz, et al.*, 1:22-cv-812-ADA-SAB. Second, the prior case's dismissal a mere month before the filing of the instant case strongly suggests that Plaintiff would not have forgotten about it. Third, the Court has considered Plaintiff's *pro se* status; however, the degree of leniency that might typically be afforded to a non-lawyer is diminished because Plaintiff is an experienced litigator, having filed at least twenty-two lawsuits this year, with the vast majority being filed before this case. Fourth, some of Plaintiff's conduct suggests a malicious disregard of the truth, *e.g.*, his assertion that his "previous lawsuit . . . was not dismissed for failure to state a cognizable claim" when the order dismissing his prior case stated that the case was "dismissed due to plaintiff's failure to state a cognizable claim upon which relief may be granted." Accordingly, all circumstances indicate that this case is frivolous.

### V.    CONCLUSIONS AND ORDER

As explained above, it appears that Plaintiff's case is barred by claim preclusion and is frivolous and thus should be dismissed with prejudice. However, Plaintiff will be given an opportunity to explain why his case should not be dismissed.

Accordingly, IT IS ORDERED that, within twenty-one (21) days of being served with a

copy of this order, Plaintiff shall show cause why this case should not be dismissed with prejudice on claim preclusion grounds and for frivolousness.

IT IS SO ORDERED.

Dated: **November 30, 2022**   /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE